## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | | |
|---|---|---|
| JOSALYN MICHELLE DUCKWORTH | ) | |
| | ) | |
| v. | ) | NO. 2:06-CV-69 |
| | ) | (Cr: 2:02-CR-23) |
| UNITED STATES OF AMERICA | ) | Jordan/Inman |

## **MEMORANDUM OPINION**

Proceeding *pro se*, federal inmate Josalyn Michelle Duckworth brings this motion to vacate, set aside or correct her sentence under 28 U.S.C. § 2255. In 2005, following her guilty plea, petitioner was convicted of conspiring to distribute and possessing with the intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846 and § 841(a)(1). For this offense, she received a 151-month term of imprisonment, which was reduced subsequently to 120 months, pursuant to the government's Rule 35 motion. Petitioner did not seek direct review, filing instead this instant motion, alleging multiple instances of ineffective assistance of counsel during sentencing and prosecutorial misconduct, also in connection with her sentencing. The United States has filed a response, arguing that petitioner's claims warrant no relief and that this § 2255 motion should be dismissed.

## **I. Factual Background**

Petitioner pled guilty to Count one of an 11-count indictment charging her and

two co-defendants with crack cocaine offenses. Supporting her plea to the § 841(a)(1) violation was an agreed factual basis, signed by petitioner [Doc. 64 in the criminal case file],[1] with which she orally concurred when those facts were recited by the Government's attorney during her change of plea hearing. [Doc. 102, Plea Hr'g Tr.] This document shows, and petitioner so acknowledged, that witnesses would have testified that, beginning in February of 2001 through late March of 2002, she was involved in a conspiracy to distribute thirteen (13) ounces of crack cocaine in Eastern Tennessee and Western North Carolina. The proof would have demonstrated that petitioner traveled to North Carolina to obtain crack cocaine for distribution in this district and that some of the drug was dealt out of a "crack house," operated by a co-defendant in a Johnson City apartment. At this establishment, which petitioner managed, she introduced co-conspirators to crack cocaine suppliers.

Often, petitioner had multiple-ounce quantities of crack cocaine in her possession, according to the cooperating co-conspirators, and on three or four occasions, she purchased ¼ ounce quantities of crack cocaine. Also, one co-conspirator would have testified that she advanced petitioner funds to buy ¼ ounce of crack for another co-conspirator and that, when this transaction was consummated, petitioner had in her possession three to four ounces of crack cocaine. In addition, the proof would have shown that petitioner told this particular co-conspirator that she was in the process of purchasing "a big eight," referring, in drug parlance, to ⅛ of a kilo or 4.5 ounces of crack cocaine. Another

---

[1]    Citations to record documents refer to petitioner's criminal case.

Case 2:02-cr-00023   Document 157   Filed 02/10/09   Page 2 of 32   PageID #: 94

co-conspirator would have testified that, twice in December of 2001, petitioner sold her an "eight ball"—a drug idiom for ⅛ ounce of crack.

Further evidence existed to show that: (1) on three specific dates in late spring and early summer of 2001, petitioner possessed respectively one ounce, two ounces, and ½ ounce of crack cocaine; (2) in July and August of 2001, petitioner sold small quantities of crack cocaine to a confidential informant in transactions which were audio- and video-recorded; and (3) when petitioner was arrested, she gave a video-recorded statement, admitting to purchasing ½ ounce quantities of crack cocaine from various individuals.

Following this recitation of facts, petitioner then pled guilty to Count one, was convicted, and proceeded to sentencing.

In preparing the presentence report ["PSR"], the probation officer calculated that, under the 2003 United States Sentencing Guidelines, petitioner's base offense level was 34. He arrived at this offense level by converting the amount of crack cocaine petitioner admitted or pled guilty to distributing [13 ounces] to its equivalent in grams, or 368.55 grams of cocaine base. After a three-point reduction for acceptance of responsibility, pursuant to USSG § 3E1.1(a) and (b), petitioner's total offense level was 31, which, with her criminal history category of four [IV], triggered by her nine criminal history points, resulted in a guideline range of 151 to 188 months. Further, her statutory sentence was a mandatory minimum of ten years up to a maximum term of life. 21 U.S.C. § 841(b)(1)(A).

Petitioner filed several objections to the PSR. [Doc. 77]. The first objection

3

was inconsequential to her sentence [i.e., that she actually arrived in Greeneville in August of 2003, whereas the PSR stated the date specifically as August 13, 2003]. In the second objection, she denied that she was the manager of the co-defendant's apartment but maintained that, over a period of time, the co-defendant had allowed the apartment to be used by a string of drug dealers, of whom petitioner was the last. Her third objection was that she qualified for a mitigating role adjustment, pursuant to § 3B1.2. The next objection was that the criminal history points derived from her past offenses over represented her criminal history. Finally, she suggested that she deserved consideration as a "minor participant" in the conspiracy, as provided in § 3B1.2(b).

The probation officer agreed with the first objection and amended the PSR accordingly. He disagreed with the second one, referencing the agreed factual basis which contains the sentence, "Defendant Duckworth acted as a manager of this crack house." The probation officer, likewise, was unpersuaded by petitioner's third objection [i.e., that she qualified for a sentencing decrease due to her mitigating role in the conspiracy] because receipt of this particular decrease requires that a defendant be the least culpable [minimal participant] of those involved or significantly less culpable than others involved [minor participant] and because the agreed upon facts showed that she was neither of these things. Among those cited facts were: the trips petitioner made to North Carolina to procure cocaine, bringing it back to this district to distribute; her management of the crack house; the introductions of her co-conspirators to cocaine suppliers; and, finally, her possession and

4

sales of crack cocaine to many individuals on different occasions. As to her suggestion that the number of points assigned to her convictions overstated her criminal history, the probation officer demurred, pointing out that, not only had she sustained five criminal convictions within five years or less of the instant cocaine conspiracy conviction, but that she also was on state probation at the time she committed the federal offense.

Petitioner filed one supplemental objection [Doc. 113], implicitly arguing for a lower sentence by referencing the "effectively advisory" nature of the guidelines under *United States v. Booker*, 543 U.S. 220 (2005). She also moved for a downward departure based on the same Supreme Court authority. [Doc. 114].

At the sentencing hearing which followed, the Court entertained petitioner's arguments supporting her objections, denied her motion to depart downward, and sentenced her to a term of 151 months—the lowest possible sentence in her guidelines range. Later, the government submitted a Rule 35 motion for a reduction of her sentence; the motion was granted; and petitioner's sentence was lowered to 120 months. [Docs. 122 and 128]. Petitioner's motion for retroactive application of the sentencing guidelines to her crack cocaine offense [Doc. 152] is currently pending and, if it is successful and if her attorney's suggested sentence is accepted by the Court, her sentence could be lowered to 102 months.

## II. Standards of Review

To seek relief under § 2255, a prisoner "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3)

5

an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir.2003) (citation omitted). A petitioner can be granted § 2255 relief on the basis of a constitutional error which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994). A prisoner who is seeking to obtain collateral relief must clear a "significantly higher hurdle" than would exist on direct appeal. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Under Rule 8 of the RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT COURTS, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively a petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court finds that an evidentiary hearing is not required here.

## III. Discussion

Petitioner was represented by a court-appointed attorney, Mr. Paul G. Whetstone. Petitioner states in her pleading that she does not contest or challenge her guilty plea, but wishes to raise only those errors made by Mr. Whetstone at her sentencing and instances of misconduct on the part of the prosecutor. Petitioner has placed the Court in an awkward position by disavowing any intent to challenge her guilty plea, while at the same time, charging Mr. Whetstone with multiple failings with regard to her plea and the prosecution with several misdeeds as well.

6

The Court has decided that the better course is to take petitioner at her word

[i.e., that she is not challenging the guilty plea] and to assume that the allegations which bear

on the legality of her plea are merely a matter of inartful drafting on the part of this *pro se*

petitioner. The Court finds it, therefore, unnecessary to address these claims because they

would impact her plea.[2]

_____

[2] These are the claims which would impinge on her plea and, hence, will not be
addressed.

1. Petitioner's attorney gave her ineffective assistance in that he:

\*failed to explain how the Plea Agreement and factual basis would affect
punishment;

\*failed to explain and try to negotiate a general guilty plea without the need for
signing a plea agreement;

\*falsely advised her that she could not plead guilty without accepting the factual
basis in the plea agreement;

\*advised her that "too many objections would mean that they would have to go to
trial"when she objected to signing the untrue statements in the plea agreement, to wit, that
she managed the crack house and that she introduced dealers to suppliers;

\*[by implication] failed to be an advocate who researched her case, advocated on
her behalf, attempted to negotiate for her benefit, and properly advised her as to her
possible sentence before asking her to execute a plea agreement.

\*pressured her to do what he told her without adequate explanation, to accept the
plea agreement, and specifically told her that she could appeal after sentencing as to the
factual issues;

\*induced her to plead guilty by grossly underestimating the sentence she would
receive and she believed, based on this advice, that she would get a substantially lower
sentence; and

\*failed to correspond and meet regularly with her so that she could ask questions
and educate herself as to the case, scheduling only relatively brief discussions shortly
before court dates and pressuring her to do what he told her without providing her with an
adequate explanation.

2. The prosecution engaged in misconduct.

Petitioner alleges that she was induced to execute a plea agreement in part based on
a written agreement provided her by FBI Agent R. Droolshagen, which stated that her
maximum sentence would be ten years (120 months) and, further, that she would be likely

7

## A. **Applicable Law**

### 1. **Ineffective Assistance**

The United States Supreme Court has established a two-part test for determining when assistance of counsel is ineffective. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, the petitioner must show her counsel's errors were so egregious as to render counsel's performance constitutionally deficient – that is, outside the "wide range of professional assistance." *Id.*, at 687; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. Second, petitioner must show her counsel's deficient performance so prejudiced her that the result is unreliable. *Id.*, at 687. As the Supreme Court explained, in order to show counsel's performance was deficient, petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*, at 689.

---

to receive a sentence reduction based on substantial assistance to the government. She was not given a copy of the agreement. While conceding that her sentence was reduced later to 120 months, she takes the position that, had her original sentence been 120 months, the reduction would have decreased it to 90 months or less. She also raises a companion claim of ineffective assistance. Insofar as these claims can be read narrowly (i.e., as relating solely to her sentencing), success on them may affect her sentencing but would not undermine her conviction. Thus, the sentencing aspect of these claims will be considered by the Court.

In addition to deficient performance, a petitioner must also show actual prejudice. A petitioner will satisfy the prejudice aspect of this test if she shows that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.[3] In order to establish "prejudice" within the context of a guilty plea, the petitioner must show that there is a reasonable probability that, but for counsel's professional errors, she would not have pled guilty but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Failure to object to an enhancement at sentencing may constitute ineffective assistance. *United States v. Otero*, 502 F.3d 331, 336-337 (3rd Cir. 2007); *United States v. Franks*, 230 F.3d 811, 814-15 (5th Cir. 2000).

## 2. Plea Agreement

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 427 (1971). However, the general rule is that "once the government enters into a Rule 11 plea agreement containing an integration clause, the result ... should be final and immune from collateral attack." *United States v. Hunt*, 204 F.3d 931, 936 (6th Cir. 2000). Furthermore, a written plea agreement which contains an integration clause ordinarily precludes a defendant from claiming that

---

[3]    "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

there were side deals or promises not contained within the plea agreement itself. *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994)).

## B. **Analysis**

The claims are examined separately.

### 1. **Ineffective Assistance of Counsel - Right to Appeal**.

Petitioner first contends Mr. Whetstone denied her the right to appeal. The Supreme Court has held that an attorney who fails to file an appeal on behalf of a defendant who has specifically requested that he do so acts in a professionally unreasonable manner. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citations omitted). Even absent an express request, an attorney's failure to consult with a defendant about an appeal, where he has a constitutionally-imposed duty to consult, constitutes a deficient performance. *Id.* at 478-81. Where counsel's deficient performance deprives a defendant of an appeal which he otherwise would have taken, there exists actual prejudice. *Id.* at 484.

Under petitioner's allegations, Mr. Whetstone discussed an appeal with petitioner, and thus the Court need go no further with respect to the consultation prong of the *Flores-Ortega* inquiry. The fate of this claim turns in part on whether petitioner's affirmative answer to counsel's question as to whether she "wished to appeal" constitutes a firm wish or a clear request to appeal. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an

10

appeal." *Flores-Ortega*, 528 U.S. at 478; *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (Constitution implicated only when defendant actually requests an appeal and counsel disregards the request).

There are two indications that neither party viewed petitioner's affirmative response to her attorney's question as being a specific instruction to file a notice of appeal. First, after Mr. Whetstone met with his client to discuss the appeal, his parting advice to petitioner was to "think about it and call him." The only logical reason an attorney would give this advice is if the matter remains undecided because his client is still considering whether she should pursue an appeal. It is also telling that petitioner does not contend that, after Mr. Whetstone counseled her to think about whether to take an appeal and to let him know, that she informed him that she had already given him an instruction to appeal by means of her earlier response.

Secondly, petitioner herself understood that counsel did not view her response to his question as a "final decision"because she says so in her motion and because she also describes her fruitless attempts to contact her attorney to ask him to file an appeal. The latter conduct only makes sense if petitioner apprehended that, at their earlier meeting, her indication that she wished to appeal was not a clearly-conveyed request to Mr. Whetstone to file an appeal and that she needed to initiate further contact with him and instruct him to make such a filing. She also knew that she had ten days to file the notice of appeal because the Court so advised her at the sentencing hearing. Even so, when her telephone calls were

11

not answered by Mr. Whetstone and she could not communicate to him her desire to appeal, there is nothing in the record to show that she attempted to apprise the Court of the situation—a course of action followed by one of her co-defendants. [Doc. 84, Letter from LaTonya Fuller, petitioner's co-defendant].[4]

The alleged telephone contact she ultimately made with counsel is more troublesome. As it stands, the allegations of fact in petitioner's motion, signed under penalty of perjury, provide the only recounting of that purported conversation. The United States, in its response, invites the Court to make a one-sided credibility determination. It suggests that petitioner's contentions are not to be believed because she maintains that she was able to reach Mr. Whetstone on Saturday, but not through the work week, and because counsel's supposed advice about the lapse of the time for appeal was incorrect under the Federal Rules of Appellate Procedure. The implications to be drawn from the government's arguments are that Mr. Whetstone would have been in his office to receive petitioner's telephone call Monday through Friday; would not have been there on Saturday, and would not have given and did not give the incorrect advice regarding the time for appeal which is ascribed to him by petitioner.

Based on the Court's experience, however, it would not be atypical for an

---

[4] Ms. Fuller's letter was treated as a notice of appeal because, in it, she informed the Court that she had made numerous but fruitless attempts to contact her attorney; she requested to pursue an appeal; and she asked for a court-appointed attorney to represent her in that matter.

12

attorney to answer a client's call to his office on a weekend day, even though the caller's attempts to reach him through the work week had been abortive. After all, attorneys frequently work on weekends and a client might not be able to contact an attorney during the traditional work week because he is in the midst of a lengthy trial, hearing or deposition; preparing pleadings under looming deadlines; preparing a case for an impending trial; out of town or on vacation; or for a number of other reasons.

Given all these possibilities, the Court is unable to draw the requisite implications and must decline to resolve the issue by making a credibility judgment as to petitioner's contentions, when no competing facts have been offered by the United States. Though the Court takes judicial notice of Mr. Whetstone's acumen in computing time parameters, [*see* Doc. 15 in *Bryant v. Carlton*, Civil Action No. 2:05-CV-151 (E.D.Tenn. Aug. 3, 2007)], under the circumstances alleged by petitioner, it appears that his calculation was wrong in her case. Likewise incorrect was counsel's claimed statement that, since petitioner had been sentenced, he no longer represented her. In fact, he was required to continue to represent her on appeal unless specifically relieved of that obligation by the Sixth Circuit. *See* 6th Cir. R. 101 (a).

The Sixth Amendment guarantees effective assistance of counsel on the first appeal as of right." *Moore v. Carlton,* 74 F.3d 689, 692 (6th Cir.) (*citing Evitts v. Lucey,* 469 U.S. 387 (1985), *cert. denied,* 516 U.S. 1183 (1996). The Court will assume, for the sake of discussion, that a criminal lawyer who incorrectly advises a defendant during the ten-day

13

period for filing a notice of appeal that it is too late to appeal or mistakenly informs her that his representation has ended makes a professional error which constitutes a deficient performance. Even so, petitioner must still show that she was prejudiced as a result of that assumed deficiency of performance, i.e., that these claimed errors deprived her of a fair appeal, *i.e.,* an appeal where the result is reliable. *Moore,* 74 F.3d at 693.

Petitioner cannot make that showing for several reasons. First of all, paragraph fourteen in her plea agreement provides, in relevant part, that petitioner "knowingly and voluntarily agrees to waive all rights to appeal her conviction or sentence on any ground ... provided that the sentence does not exceed the statutory maximum ... or does not otherwise constitute a violation of law." [Doc. 63, Plea Agreement at 9]. The document goes on to say that the waiver does not apply to petitioner's right to appeal raising claims of ineffective assistance of counsel and prosecutorial misconduct not known to her at the time of her plea. [*Id.* at 10].

It is well recognized that a party may waive a provision intended for his benefit in a contract or statute. *Shutte v. Thompson,* 21 L.Ed. 123 (1873). Even fundamental constitutional rights may be waived by an accused, so long as the waiver is knowingly and voluntarily made. *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987) (double jeopardy defense); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (same, rights to jury trial and confrontation and privilege against self-incrimination); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) (right to counsel); *United States v. Ashe*, 47 F.3d 770 (6th Cir. 1995) (right to appeal).

14

Therefore, so long as petitioner understood the terms of the plea agreement and so long as it was made voluntarily and knowingly, the waiver part of that agreement is valid and enforceable. Based on the transcript of the plea proceedings, it is clear to the Court that petitioner understood the charges against her, that she understood the minimum and maximum penalties for the charges, that she understood the plea agreement, including the waiver provision, that she understood the consequences of her guilty plea, and, as the Court so found at the change-of-plea hearing, that she entered her plea voluntarily and knowingly. Therefore, the waiver-of-appeal provision in the plea agreement is valid and enforceable.

Secondly, notwithstanding the right-to-appeal waiver, petitioner has not indicated, and there is nothing in the motion or record to indicate, what she lost that she otherwise would probably have won on appeal. She has not specified or articulated any valid legal issue concerning her sentence which should have been raised on appeal *and* which was unknown at the time of her plea and was discovered prior to the lapse of the ten-day appeal period. Even if the Court were to presume that she would have raised the claims of prosecutorial misconduct and ineffective assistance presented in her § 2255 motion, none of these issues are viable, as is made clear in the discussion which follows. A defense attorney cannot be expected or required to file a notice of appeal in a case without some proper legal grounds to support the appeal. *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir.1986). Nor can that attorney be found to have given ineffective assistance when he does not raise such claims. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001).

15

Finally, as set forth previously, petitioner's original sentence was 151 months. Counsel stated, in his sentencing argument, that his client hoped to return to Court under a Rule 35 provision and ask for a sentence reduction. This hope came to fruition when the Court found that petitioner's post-judgment substantial assistance warranted a lower sentence; granted the Rule 35 motion; and reduced her sentence to 120 months. Since petitioner has achieved the sentencing relief which she maintains might have been afforded her on appeal, but for Mr. Whetstone's alleged ineffective assistance, she has not been prejudiced.

The Court concludes that, for the above reasons, petitioner has not established that Mr. Whetstone's failure to file an appeal or his incorrect advice constituted ineffective assistance since there is no reasonable probability that the outcome of her case would have been different, had he filed an appeal on her behalf. *Moore,* 74 F.3d at 692. Accordingly, this claim lacks merit.

## 2. **Ineffective Assistance of Counsel - Sentencing**.

Secondly, petitioner contends that Mr. Whetstone failed to argue certain sentencing mistakes, as illustrated below.

### a) Jury-Right Claim.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the jury-right guarantee of the Sixth Amendment applies to the Federal Sentencing Guidelines and that it requires that any fact, other than a prior conviction, which is necessary

16

to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. According to petitioner, the rule in *Booker* was violated in several instances, without objection/argument by her attorney.[5]

First, petitioner maintains that the plea agreement specified that she would plead to a drug quantity of 50 grams or more of a detectable amount of cocaine base, which would have resulted in a base level offense of 32, whereas the PSR stated that the amount of crack cocaine was 13 ounces, which gave her a base level offense of 34. The Court infers that petitioner is alleging that the drug quantity [13 ounces] was an uncharged and judicially-found fact used to increase her sentence and that this violated her right to have jury determination of this "above the statutory maximum"sentence-increasing fact, as *Booker* so held.

Unfortunately for petitioner, her allegation is clearly contradicted by the record. In the agreed factual basis, petitioner stipulated that she conspired "to distribute and possess with the intent to distribute thirteen (13) ounces of a mixture or substance containing a detectible amount of cocaine base (crack)." [Doc. 64]. The plea agreement recounts what

---

[5] There is no retroactivity issue here since *Booker* was decided on January 12, 2005, petitioner was convicted on February 22, 2005, and her conviction became final ten days later. The retroactivity doctrine provides that, generally, a decision announcing a new rule which is rendered before a conviction becomes final applies to that conviction. *Teague v. Lane.* Moreover, given that the jury-right allegations are raised as illustrations of ineffective assistance of counsel and not as stand-alone claims, there is no issue as to procedural default either. *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

17

the government had to prove to find petitioner guilty of violating 21 U.S.C. § 846, as charged in Count one of the indictment, to wit, that she knowingly and intentionally conspired to distribute 50 grams or more of crack cocaine. The drug-quantity element of petitioner's crime was not the *50-grams part*, which she seemingly believes it was. Instead, the drug-quantity element of petitioner's offense was the *or-more part* of the § 846 offense.

As petitioner recognizes, *Booker* permits a judge to impose the statutory maximum sentence pursuant to the guidelines based solely on facts found by a jury or *admitted by a defendant*. Petitioner stipulated that the conspiracy in which she engaged involved 13 ounces of crack cocaine. Thus, the drug amount was a fact admitted by petitioner and she has no legitimate claim under *Booker*. Counsel is not required to raise claims that have no factual basis and are doomed to fail. *Krist*, 804 F.2d 944, 946-47. This particular claim of attorney error has no merit and cannot sustain a finding of ineffective assistance on the part of Mr. Whetstone. *Greer*, 264 F.3d at 676.

b) Other Sentencing Claims.

i.) Petitioner maintains that her lawyer committed another *Booker* error by failing to challenge the improper computation of her criminal history points. However, she does not connect the alleged miscalculation to the *Booker* rule and, thus, it appears this purported error on the part of her attorney is nothing more than garden variety claim of ineffective assistance. In any event, petitioner contends that the state criminal charges, as set forth in paragraphs 32 and 33 in her PSR, were consolidated for sentencing and should

18

have been counted only once. Counsel's inaction in this regard, according to petitioner, caused an increase in her criminal history points and resulted in a higher guidelines sentencing range than she otherwise would have received. The Court infers that petitioner is arguing that those prior convictions should have been treated as related because they were consolidated for sentencing, but instead, were treated as distinct offenses.[6]

Prior sentences imposed in related cases are to be treated as one sentence for purposes of section 4A1.1(a), (b), and (c) of the United States Sentencing Guidelines. However, "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." Application Note 3 to § 4A1.2. And prior sentences imposed in unrelated cases are to be counted separately. U.S.S.G. § 4A1.2(a)(2).

To resolve petitioner's claim, the Court has reviewed her PSR, has examined the probation officer's file, and has pieced together the sequential events pertaining to petitioner's convictions and associated criminal history points. The PSR stated that, on the evening of February 6, 1997, petitioner was arrested in North Carolina and charged with resisting, delaying or obstructing an officer; possession of marijuana; and giving false information to an officer. [PSR, ¶¶ 33 and 34, Docket Nos. 97 CR 3247, 3248 and 3287]. Documents in the probation officer's file reflect that, on February 7, 1997, petitioner, *who*

---

[6]  Prior sentences are considered related if they resulted from offenses that occurred on the same occasion; were part of a single common scheme or plan; or were consolidated for trial or sentencing. Application Note 3 to USSG § 4A1.2.

19

*was still in custody on the above charges*, was served with arrest warrants in connection with charges of forgery and uttering a forged endorsement. [PSR, ¶ 32, Docket Nos. 97 CR 3245- 3246; Probation File].

Petitioner was released on bond, but days later (on February 11, 1997, to be precise), she was arrested on a second set of charges, i.e., nine charges of obtaining property by false pretenses. [PSR, ¶ 32, Docket Nos. 97 CR 3594, 3595, 3596, 3597, 3598, 3599, 3600, 3601 and 3602; Probation File]. Petitioner pled guilty to both sets of charges, along with two 1996 charges of forgery and uttering [ PSR, ¶ 32, Docket No. 97 CR 121; Probation File; Transcript of Plea]; was convicted; and the cases were consolidated for sentencing. *[Id.*, Judgment].

Thus, while petitioner is correct in claiming that the convictions listed in paragraphs 32 and 33 in her PSR were consolidated for sentencing, she overlooks the fact that, even though she was arrested on the first set of charges on February 6, 1997, she was not arrested on the latter group of charges until February 11, 1997—five days after her first arrest. This fact is significant because, by statutory mandate, convictions separated by an intervening arrest are unrelated and must be counted as separate cases.

Given that petitioner's convictions were based on two sets of charges which were separated by an intervening arrest and, therefore, were unrelated, they should have been treated as separate cases. Had this happened, the first set of convictions would have resulted in two criminal history points; the second set would have netted petitioner an additional two

20

points; and her total would have been four points, not the two points she was assessed.

In other words, petitioner received a windfall—only two criminal history points for this entire panoply of convictions, rather than the four points which those convictions truly warranted. There was no deficiency of performance on the part of her attorney by failing to object to an error which redounded to his client's benefit and, obviously, no prejudice.

Nevertheless, the Court's review of the PSR has disclosed another problem with petitioner's criminal history scoring. Petitioner was assigned one criminal history point in connection with her convictions for resisting an officer and for marijuana possession. [PSR, ¶ 33, Docket Nos. 97 CR 3247 and 3287]. As discussed, these charges, along with the charge for giving false information to an officer, formed the basis for petitioner's arrest on February 6, 1997, and all three were part of the first set of charges which, though consolidated for sentencing, were not separated by an intervening arrest. These convictions [the ones in paragraph 33] are related to the first set of charges; may not be treated as separate cases; and may not be assigned *any* criminal history points. Because this one-point error benefits the government, not petitioner, this raises the question as to whether counsel's inaction with regard to this error fell outside the bounds of the "wide range of professional assistance" the Constitution requires.

The Court thinks that it did not. Weeding through petitioner's convoluted and confusing criminal background has been a difficult task for the Court. No doubt, counsel for

21

petitioner would have experienced—and likely did experience, given the number of specific objections he raised to the PSR—a similar ordeal in computing her criminal history. The Constitution does not command that a criminal defense attorney render perfect representation—only reasonably effective assistance. *Strickland*, 466 U.S. at 687. The Court is unable to conclude that counsel's performance fell outside the bounds of the "objectively reasonable" attorney conduct discussed in *Strickland*. After all, there are many ways to defend a citizen accused in any given case. *Id*. at 689-90.

But even if counsel's performance fell below the constitutional floor of performance, there was no prejudice to petitioner's defense. Had counsel raised these matters during the sentencing proceedings, it would have generated a more searching examination of petitioner's criminal record, which in turn, undoubtedly would have disclosed the errors in the criminal history scoring which the Court has discovered. Petitioner's criminal history score in the PSR totaled nine points, which translated to a criminal history Category IV. Subtracting the one point which should not have been assessed for the convictions listed in paragraph 33 leaves petitioner with eight criminal history points. However, adding to the eight points the two points which she did not receive but should have received for the second set of convictions identified in paragraph 32 results in a sum of ten criminal history points; increases her criminal history category to a Category V; and raises her guidelines sentencing range to 181 to 201 months. *See* USSG Sentencing Table, 18 U.S.C. Appx. Ch. 5, Part A.

22

Petitioner's original sentence was 151 months—the lowest possible sentence in her guidelines range. If counsel's acts or omissions with respect to the criminal history miscalculations discussed above amounted to a deficient performance—which the Court does not find—they inured overall to petitioner's benefit and did not prejudice her at sentencing.[7] There was no ineffective assistance.

ii) Petitioner's second contention in this group of sentencing claims is that her attorney noted that the criminal history point she received for North Carolina convictions for speeding and for driving while her license was revoked [PSR, ¶ 35] was in error, but that he failed to argue that issue to the Court. Petitioner, however, has not identified the alleged mistake in the calculation of her North Carolina convictions, nor factually developed her ancillary claim of ineffective assistance. Without some allegations of fact to sustain this claim, it is conclusory. A claim which is not supported by proof or any reference to such proof is legally insufficient to sustain a review. *See, e .g., Short v. United States*, 504 F.2d 63, 65 (6th Cir.1974) (per curiam). Moreover, even if the claim were not conclusory, the probation officer correctly assigned these convictions one criminal history point.

iii) Petitioner next maintains that she was provided a written agreement

---

[7] And, it is entirely possible that counsel noticed the error but, by means of the same reasoning used to determine that no prejudice ensued, made a tactical decision to let it pass unheralded.

23

by R. Drolshagen, an agent with the Federal Bureau of Investigation, stating that her maximum sentence would be ten years (120 months) and that she likely would receive a sentence reduction based on her substantial assistance to the government. Conversely, petitioner also contends that she was not provided a copy of the agreement by Agent Drolshagen or, when she so requested, by her own attorney. She faults her attorney for failing to present this issue at sentencing to show that she had been promised a lesser sentence. Petitioner concedes that her sentence was lowered to 120 months upon the government's Rule 35 motion, but also suggests that her sentence would have been reduced to 90 months, had her first punishment been set at 120 months, as provided for in the putative Drolshagen agreement.

A little background information will supply necessary context for petitioner's claims. According to the sentencing transcript, the agent from the Federal Bureau of Investigation who had debriefed petitioner, Agent Reiner Drolshagen, was in Afghanistan on a job assignment at the time of the sentencing hearing and, therefore, could not appear to testify as to the extent of petitioner's assistance. The government did not move for a downward departure for substantial assistance under 18 U.S.S.G. § 5K1.1[8] and petitioner

---

[8] While recognizing that petitioner aided the government by naming ninety individuals as being involved in the drug trade, the government's attorney argued that twenty-five to forty of those persons had already pled guilty by the time petitioner came into the federal system. The prosecutor then reported that he had received an email that morning from Agent Drolshagen in Afghanistan to that effect, i.e., that the information petitioner had disclosed to him "was just too late."

24

suggested that, but for the Mr. Drolshagen's absence at the sentencing proceedings, the United States might well have made such a motion.

Despite the fact that the guidelines only permit the *government* to make a 5K1.1 motion, *petitioner* herself filed a § 5K1.1 motion.[9] Although the government objected to petitioner's § 5K1.1 motion, it did recommend that petitioner be rewarded for her effort to aid the government by fixing her sentence at the low end of her guidelines range or even below the range. As discussed earlier, the Court sentenced petitioner to 151 months—the bottom of her guidelines range.

In its response, the United States correctly points out that the plea agreement indicates that the minimum mandatory sentence for petitioner's § 846 offense is ten years; that the statutory maximum is life; and that the appropriate sentence is to be determined by the Court. The final paragraph in this document states that the plea agreement constitutes the full and complete agreement and understanding between the parties and that there are no other agreements, promises, undertakings, or understandings between them. And, as the government also indicates, the Court questioned petitioner at the change of plea hearing concerning this very point.

. . . . .

[9] Petitioner's sentencing occurred on February 15, 2005—during the period of uncertainty which followed the January issuance of *United States v. Booker*, 543 U.S. 220 (2005). Petitioner's attorney stated during the sentencing hearing that he was making the motion merely to preserve the issue because it was unclear to him whether the procedure for making such motions had been altered by *Booker*.

THE COURT: Ms. Duckworth, has any person, including an officer or an agent of the government, put any pressure on you, either mental or physical, to force you to plead guilty?

MS. DUCKWORTH: No, sir.

THE COURT: All right. Aside from the plea agreement, has any officer or agent of the government promised or suggested that you would receive a lighter sentence or any other form of leniency if you would plead guilty?

MS. DUCKWORTH: No promises.

THE COURT: All Right....

. . . . .

THE COURT: And do you understand that the government has not made any agreement to recommend a particular sentence and that your sentence will be determined by the court in conformity with the sentencing guidelines?

MS. DUCKWORTH: I understand.

[Doc. 102, Plea Hr'g Tr. at 9-10, 14].

During the plea colloquy, petitioner was advised that the minimum mandatory penalty for the cocaine conspiracy was not less than ten years, that the maximum was life imprisonment, and that other penalties applied as well. She indicated that she knew the penalties but still wished to plead guilty. Thereafter, the Court found that petitioner understood the maximum and minimum penalties provided by law for the conspiracy, was

26

competent to plead guilty, and was doing so knowingly and voluntarily.

It is well-settled that where a court scrupulously follows the requirements of Fed. R. Crim. P. 11, "'the defendant is bound by his statements in response to that court's inquiry.'" *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). *See also Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992) (defendant's "decision to lie to the district court cannot amount to prejudice").

In *Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994), the district court accepted a guilty plea pursuant to a plea agreement, but failed to ask the defendant, as Rule 11 requires, whether there were any promises external to that plea document. The Sixth Circuit explained the significance of that omission: "Such an inquiry would have prompted disclosure of the promises on which [petitioner] relies here, or, if [petitioner] had remained silent, likely would foreclose his postconviction reliance on these promises." *Id*. at 1345.

So it is here. Based on the record, including petitioner's sworn statements, the Court finds that no promises of a lesser sentence were made to petitioner and that she knew, and so acknowledged, that the maximum penalty for the cocaine conspiracy was life and that the sentence she would receive would be decided by the Court, and not on the basis of any F.B.I. agent's agreement, if one existed. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in h[er] *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir.

1983). Counsel did not render a prejudicial performance in this instance and petitioner's claim to the contrary has no merit.

iv) Counsel's fourth shortcoming at sentencing, according to petitioner, was his failure to identify, research, document, and advocate mitigating grounds which would have justified downward adjustments to her sentence. She claims that her conduct did not threaten the harm sought to be prevented by proscribing the offense, because she was a drug consumer, not a major supplier; that she showed an utter lack of sophistication in committing the offense and extreme remorse for the crime; that she had been in a physically-abusive relationship with her ex-boyfriend; that her imprisonment had an extraordinary impact on her family; and that her criminal history overstates her propensity to commit crimes. Though admitting that counsel raised the last issue, she faults him for failing to pursue it or prepare her to pursue it at the sentencing hearing. These errors cumulatively, so petitioner alleges, had the effect of denying her effective assistance of counsel at the sentencing phase of her criminal proceedings.

As the government points out in its brief, some of these issues were offered by counsel to mitigate petitioner's sentence and some were contained and taken into account in the PSR. The facts of the case as stated in the plea agreement; in the Agreed Factual Basis; reiterated in the PSR; acknowledged by petitioner; and discussed in connection with her first ineffectiveness claim permit the Court to conclude that she was not a mere drug consumer because they show her to be dealing in sizable amounts of crack cocaine. Indeed, during the

28

sentencing hearing, petitioner testified that selling drugs had not helped her life in any way and also that "[f]ast money never lasts. It goes faster than you get it." [Sent. Hr'g Tr. 20, 22].

The Court was well aware that petitioner had expressed remorse for engaging in the cocaine conspiracy because, at the sentencing hearing, it listened to her testimony and heard her read a letter of apology for dealing drugs. Further, the Court heard her testify that she was a single parent who was needed by her daughter and that she had left "a very violent relationship" when she came to Tennessee. Petitioner's allegation that her criminal history was overstated was thoroughly discussed in connection with an earlier claim of ineffective assistance of counsel. The *propensity* of petitioner to commit crimes—as opposed to her actual *commission* of the crimes which comprised her criminal history—was not part of the sentencing calculus. Hence, this characteristic, if it exists, played no part in petitioner's punishment.

Therefore, the Court was cognizant of the above matters—those which are relevant—when it set the punishment at 151 months. Moreover, questions answered by petitioner on direct examination served to apprise the Court of petitioner's family situation (i.e., that petitioner's mother was not in good health, had diabetes, and was raising petitioner's then 12-year-old daughter) and of petitioner's past and continuing assistance to the government, the latter of which could result in a reduced sentence pursuant to a Rule 35 motion, if she provided sufficient help to the government. Petitioner received a 3-level reduction for acceptance of responsibility, and the fact that she admitted to being a manager

of the crack house did not increase her sentence. Accordingly, there was no deficiency of performance and no prejudice either because, had counsel done all that petitioner insists that he should have done (much of which he did do), no different result would have obtained.

### 3. **Prosecutorial Misconduct - Sentencing**.

The final matter raised in the § 2255 motion is the government's purported violation of the cooperation provision in the plea agreement. More specifically, petitioner claims that she was a mere user—not a large-scale dealer—and that her acknowledgment of certain facts in the plea agreement was used as grounds for denying her a sentence reduction for her minor or mitigating role in the cocaine conspiracy. The remedy she suggests for the alleged breach of the cooperation agreement is that she "be allowed to withdraw the statements of facts and admissions contained in the plea agreement and any other provisions which detrimentally affected her sentencing or appeal rights."

The United States, in its response, maintains that this claim entitles petitioner to no relief, pointing out that she has failed to identify any information, which was not known prior to the entry of the plea agreement; furnished as part of the cooperation provision of the plea document; and impermissibly used to set her sentence. The government indicates that the plea agreement did not prohibit the Court from relying on information known before the agreement was entered, provided by petitioner's co-conspirators, obtained from her drug transactions with the undercover agent(s), or disclosed by any other source identified in the Agreed Factual Basis.

30

The government's position on this claim is sound. The Court has already disposed of petitioner's contention that she was a "mere user." To succeed on the remainder of this claim, petitioner must (1) pinpoint the information purportedly disclosed as part of her cooperation agreement; (2) show that the information was not otherwise known from legitimate sources, including the Agreed Factual Basis and the PSR; and (3) establish that the sentencing decision was based on that information. The bald allegations offered here do not perform that function. *See Ross,* 694 F.2d at 1011.

Nor is petitioner's suggested remedy a valid one. *Santobello*, 404 U.S. at 263 (explaining that there are two remedies for a broken plea agreement—either specific performance of the agreement or withdrawal of the guilty plea). A district court considering a plea agreement may accept or reject it, Fed. R. Crim. P. 11, but may not rewrite the terms of that agreement. *See United States v. Howle*, 166 F.3d 1166, 1168-69 (11th Cir. 1999); *United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993). Obviously, excising petitioner's statements, admissions of fact, and any provisions of the agreement which worked to her detriment would require the agreement to be rewritten, a task which the Court may not perform.

Moreover, aside from the plea document itself, petitioner's plea is also supported by her acknowledgment under oath of the facts surrounding the cocaine offense, as recounted by the prosecutor at her change-of-plea hearing. [Doc. 102, Plea Hr'g Tr. at 10-12, 14]. Additionally, a judgment could not enter in petitioner's case without facts sufficient

to sustain her plea being placed on the record. Fed. R. Crim. P. 11(f) (stressing that judgment should not be entered "without making such inquiry as shall satisfy [a court] that there is a factual basis for the plea"). Based on the above reasoning, the Court finds that the conduct alleged on the part of the prosecutor did not infringe on petitioner's right to a fair trial and does not entitle her to relief.

## IV. Conclusion

None of the grounds for relief offered in this pleading have merit and, accordingly, this motion to vacate will be **DENIED**.

A separate order shall enter.

**ENTER**:

LEON JORDAN
UNITED STATES DISTRICT JUDGE